PHILIP REILLY vs. JOHN E. WILLIAMS and others.

December 28, 1891.

**Mechanic's Lien—Evidence.**—Evidence *held* to justify the finding of fact as to the time when the building contract, under which a lien is claimed, was fully performed.

**Same—Entire Contract for Two Houses—Release of One—Enforcement of Lien against the Other.**—A contractor who, under one general contract with the owner, had constructed, upon contiguous lots, two separate buildings, each requiring the same amount and character of labor and material, after having been paid more than half the contract price, released one of the houses and lots from his lien, under an agreement with the owner that he should retain a lien on the other for the balance due on his contract. *Held*, that he could file and enforce his lien on the remaining house and lot for the entire balance due him, where there were no third parties whose interests were prejudicially affected by the release of the other house and lot.

Same—Purchase-Money Mortgage Subordinate to Lien.—Where a vendor accepts from the vendee, as security for part of the purchase-money, a mortgage on the property subject to a prior mortgage by the vendee to a third party, he holds it also subject to a mechanic's lien in favor of a contractor of the vendee, which attached prior to the lien of the first mortgage.

Appeal by defendants, John E. Williams, Charles J. Berryhill, and the National Fire Insurance Co., of Hartford, Conn., from an order of the district court for Ramsey county, *Otis,* J., presiding, refusing a new trial after judgment ordered for plaintiff establishing and enforcing a mechanic's lien of $2,675, and giving it priority over any lien, interest, or estate of defendants Berryhill or the insurance company. The original plaintiff, August Jackson, died after the decision, and Philip Reilly, to whom he had in his lifetime assigned all his interest, was substituted as plaintiff by order made on stipulation.

*Chas. J. Berryhill* and *Walter Holcombe,* for appellants.

*Warren H. Mead,* for respondent.

MITCHELL, J. This was an action to enforce a mechanic's lien under the provisions of chapter 200, Laws 1889. The facts necessary to an understanding of the points raised on this appeal are as follows: On April 7, 1890, defendant Berryhill, being the owner of two contiguous lots in the city of St. Paul, sold and conveyed them to defendant Williams, who thereupon went into possession. This deed was recorded April 17th. The terms of the sale were part cash and part on time. It was verbally agreed between Berryhill and Williams that the latter should give first mortgages on the lots to the defendant insurance company, to secure certain loans, and that after this was done Williams should execute to Berryhill second mortgages for the balance of the purchase-money, subject to those to the insurance company. On June 30th Williams and one Jackson (the original plaintiff in this action and the present plaintiff's assignor) entered into a written contract, (Exhibit A of the complaint,) by which Jackson was to furnish all the material and perform all the labor for the erection of two houses, one on each lot, for the gross sum of $6,580. The two houses were of the same plan, and of equal value in

labor and material. On July 1st, Jackson commenced the erection of the houses under the contract. Some time in July, Williams and Jackson modified or waived the terms of the contract as to the time within which the buildings should be completed. On August 16th,. Williams executed two mortgages, one on each lot, to the defendant insurance company, and on the 20th of the same month executed to defendant Berryhill two mortgages, one on each lot, subject to the mortgages to the insurance company, to secure the balance of the purchase-money of the lots. On August 23d, Williams conveyed the lots to Berryhill, but continued in possession. Jackson, having no knowledge of this conveyance to Berryhill, continued the construction of the houses under his contract with Williams. On November 26th,. the house on one of the lots being then completed, Jackson, at the request of Williams, released that lot from any and all liens held thereon by him; it being then and there agreed, as the court finds,. between him and Williams, that he should retain his lien upon the other house and lot for the balance due him upon the contract and $10.50 for extra work. Neither Berryhill nor the insurance company were consulted upon or agreed to this arrangement. Up to this date there had been paid to Jackson by Williams on the contract various sums, amounting to $3,915, leaving a balance due or to become due, when the other house was completed, of $2,675.50. Jackson proceeded and completed the other house, the last items of labor and material having been, as the court finds, performed and furnished on January 31, 1891. On March 4, 1891, Jackson filed a lien on. this house and lot for $2,675.50, the balance due on his contract, which, as will be observed, is considerably less than one-half of the contract price for the two houses.

The first question is whether the evidence justified the finding of the court to the effect that the house upon which the lien is claimed was not completed until January 31, 1891. This is important in determining whether the statement for a lien was seasonably filed. Defendants claim that the house was in fact fully completed in October, and that what was done by Jackson in January was a mere after-thought and pretext, for the purpose of extending the time within which he might file his lien-statement. The evidence shows,.

as the court in fact finds, that the house was substantially completed on October 25, 1890, the work done in January being merely completing or repairing a few things, amounting in all to about 13 hours' labor, the material used at that time having been delivered at the house prior to November 8th. The fact that Jackson had *substantially* performed his contract in October, so that he might then have maintained an action upon it, leaving Williams to set up, by way of recoupment, any matters with respect to which Jackson had not *fully* performed, would not be decisive as to when the time for filing the lien began to run. We think the evidence was such as to justify the court in finding that the work done in January was necessary to a full performance of the contract, that Williams demanded and insisted upon its being done as such performance, and that Jackson performed it for that purpose in good faith. If so, the lien-statement was seasonably filed.

The objection to the sufficiency of the complaint, because it does not set out the plans and specifications for the buildings referred to in the contract (Exhibit A) attached to the complaint, is clearly without merit.

Counsel for plaintiff in his brief seems to assume that defendants object to the lien-statement because it does not set out the items of labor and material. We do not understand that counsel for defendants make that point. But, if they did, there would be nothing in it, because the lien law of 1889 (Laws 1889, *c.* 200,) expressly provides that the separate items of the account need not be stated.

The main contention of the defendants is that, as the contract for the building of the two houses was an entirety, and treated the two lots as one tract, therefore Jackson had a single, indivisible lien on both lots for the building of both houses, and consequently that (1) the lien-statement was bad because it was only against one lot; and (2) that the release of one of the lots from the lien operated as a release of both.

It was decided in *Lax* v. *Peterson*, 42 Minn. 214, (44 N. W. Rep. 3,) under the former lien law, that where labor is performed or material furnished, under one entire contract, for the erection of several buildings owned by the same person, situated upon the same

tract, and the contractor knows and has the means of knowing the kind and amount of material and labor which in fact went into each building, his lien will not be lost or prejudiced by filing a separate claim against each building for the amount of labor and material which actually entered into its construction, provided there are no third parties whose interests in the property would be affected. So far from there being anything in section 7 of the present law changing the rule of *Lax* v. *Peterson*, it clearly implies that this may still be done. In the present case the plans of the two houses were exactly alike, each requiring the same amount and character of labor and material; consequently there was no difficulty in apportioning, if necessary, the amount of the entire lien between the two. And as between Jackson and Williams, at least, there was no more objection to the release of one lot, and still retaining and enforcing a lien for the whole amount due on the contract against the other, than there would be to a mortgagee's releasing part of the mortgaged premises, and still enforcing his lien on the remainder for the entire amount of the debt. Neither can Berryhill or the insurance company complain of this, unless it appears that they have been prejudiced by it, of which there is not a particle of evidence. Had it appeared, for example, that the lot released was worth more than the amount of the mortgages on it, which, if applied on Jackson's lien, would, by reducing the burden on the other lot, have reduced or prevented a deficiency of value in the other lot to satisfy the incumbrances on it, the defendants might have had reason to complain; but, so far as appears, what they lose on one lot they have gained on the other.

What has been said on these points fully covers and disposes of the contention that, at most, only half of the amount due on the building contract should be charged as a lien upon the lot in controversy.

It is argued that Berryhill's mortgage is a purchase-money mortgage, and therefore should be given priority over plaintiff's lien. It seems to us that there are two sufficient answers to this: *First*, he is here, not as mortgagee, but as grantee under the deed from Williams of August 23d, which in law worked a merger, there being

no evidence that the parties intended to keep the mortgage alive, and no equitable reasons appearing why it should be; *second*, Berryhill, having voluntarily taken his mortgage subject to that of the insurance company, must hold it subject to whatever liens are paramount to that of the insurance company. Otherwise we would have the anomalous situation in this case that, although the lien of the plaintiff is prior to the mortgage to the insurance company and the latter prior to that of Berryhill, yet Berryhill's mortgage would be prior to the lien of plaintiff. He has voluntarily selected his place in the procession, and must abide by it.

Order affirmed.