AMERICAN NATIONAL INSURANCE COMPANY v. OTIS.

Opinion delivered February 7, 1916.

1. INSURANCE—LIFE INSURANCE—REINSTATEMENT OF FORFEITED POLICY—CONDITION AS TO LIABILITY.—Where a life insurance policy became suspended, a provision by the insurance company that the same would be reinstated upon the following terms, is enforcible: "That in case death occurs from any cause whatever within five weeks from the date of such reinstatement, the company shall not be liable to any extent whatever on account of such death," and such provision, being known to the insured, was not a forfeiture of the policy.

2. INSURANCE—ACTION ON POLICY.—In a suit to recover on a policy of insurance, the insured is bound by the terms of the contract of insurance.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; reversed.

### STATEMENT BY THE COURT.

This suit was instituted by appellee against appellant to recover on a policy of life insurance issued by appellant on the life of one Alberta Rogers for the sum of $174 in favor of appellee as the beneficiary. The complaint set up the policy, alleged compliance with its terms on the part of the insured, the death of the latter, and prayed for the amount of the policy and the statutory penalty of 12 per cent and a reasonable attorney's fee.

Appellant answered, and alleged that it was not liable because the policy provides that: "In case death should occur from any cause whatever within five weeks from the date of reinstatement, the company shall not be liable to any extent whatever on account of such death;" that the insured, after being out of benefit for a certain time, was reinstated on the 4th day of January, 1915, and that the death of the insured occurred on the 19th day of January, 1915.

Appellee proved the contract of insurance, and the death of the insured on the 19th day of January, 1915; that she paid the premiums till the 23d day of February, 1914; that after that date no premiums were paid because, says the appellee, "the agent would not come out

to my house to collect, and I sent the money to the office several times but never found any one in." Appellee made application for reinstatement February 14, 1914. She signed the application for reinstatement that day, and gave the agent of appellant four dollars and took his receipt. The application contains the following provision: "I hereby declare my child who was formerly insured under the above named policy, to be in as good a state of health as when said policy was issued, and that, having allowed it to become lapsed, I wish to renew it, upon the understanding that it will not be in force (although I now pay the arrears), until the company shall have consented to revive the same."

The application for reinstatement was dated the 12th day of December, 1914. The receipt contains the following: "Under no circumstances will the company be liable under said policy in case of death, until the policy has been revived on the books of the company, and the money credited in the premium receipt book belonging to said policy." And on the margin of the receipt was the following notation: "If the company accepts the revival application amount paid will be credited in the premium receipt book belonging with the policy; otherwise the money will be returned."

The policy was returned to appellee and had on the back of it the following notation: "In consideration of lien on this policy to cover $4.20 arrears same is hereby revived subject to the conditions of policy, same to be deducted from first money due the assured."

On the 12th day of December, 1914, appellee paid appellant the further sum of forty cents and took appellant's receipt.

The superintendent of appellant, who conducted for it the negotiations with appellee for reinstatement, testified substantially as follows: The policy was turned over to him at the time or soon after the application for reinstatement. He attached the revival application to it and mailed it to the company on or after the 12th of December. The policy was due to be revived on January 4

following. Witness delivered the policy to appellee about January 10. It takes from two to four weeks to make an investigation on the policy revived, and after witness sends the policies to the company it takes some time—nearly a month—to act on them and return them. Witness delayed the policy for about thirty days for investigation. Witness accepted the $4 and also the forty cents as a deposit for revival. The death of the insured was fifteen days after the policy was revived and two months and five days after the application for revival had been made and all amounts in arrears had been paid.

The court instructed the jury to return a verdict for plaintiff in the sum of $174 and for a penalty of 12 per cent. Appellant excepted and duly prosecutes this appeal.

*Skipwith W. Adams,* for appellant.

According to the terms and conditions of the policy the insured can not recover where the death occurred within five weeks after reinstatement. 166 S. W. 17. The insurance company has the right to impose conditions for reinstatement not contrary to public policy. 112 Pac. 1106; 102 N. Y. Sup. 157. The revival was not complete until made on the books of the company. 65 N. Y. Sup. 1143; 107 Mich. 160; 64 S. E. 180.

*Fink & Dinning,* for appellee.

1. The provision in the policy on which appellant relies is void. "Revival" means to come to life again. 53 N. E. 950; 153 Ind. 160; 47 L. R. A. 489; 7 Words & Phr. 6212.

2. The provision was waived. 82 Ark. 150; 53 *Id.* 494. Forfeitures are not favored in law; and any agreement, declaration or course of action which leads one insured to believe honestly that by conforming thereto, a forfeiture will not be incurred by conformity thereto will estop the company. 65 Ark. 54; 94 *Id.* 227; 99 *Id.* 476. Fair dealing required the company to act promptly.

WOOD, J., (after stating the facts). (1) The undisputed evidence shows that when a policy holder in appel-

lant company had been suspended and had made application for reinstatement that it took the superintendent having charge of such applications from two to four weeks to make an investigation, and that it took sometimes nearly a month for the company to act on and return it. The agent took about a month for investigation, sending the application and the policy on December 12, 1914, and the policy was revived and the insured reinstated on January 4, 1915. The notation on the back recited that it was revived subject to the conditions of the policy, and the policy itself contained the reinstatement clause copied in the statement, which recites the conditions upon which the policy would be reinstated, among them being "that in case death occurs from any cause whatever within five weeks from the date of such reinstatement the company shall not be liable to any extent whatever on account of such death."

We know of no ground of public policy which forbids an insurance company from including the above as one of the conditions upon which its policy holders who are "out of benefit," *i. e.*, who have been suspended for nonpayment of premium, may be reinstated, nor is there any ground of public policy forbidding the policy holder from accepting the renewal of the policy and reinstatement upon these conditions. In the absence of some statute or some well recognized ground of public policy forbidding such conditions, the parties have a right to make them and are bound by them. See *Conway* v. *Minn. Mut. Life Ins. Co.*, 112 Pac. 106.

(2) The suit filed by appellee in this case is to recover on the policy and she is bound by the terms of the contract. It is not a suit in equity to reform the contract, nor a suit against the appellant for negligence in failing to revive the policy at an earlier date than January 4, 1915, the date when the insured was reinstated and the policy revived. Appellee, having grounded her right of action on the policy, under its plain provisions, is not entitled to recover.

This court has often held that the doctrine of waiver and estoppel applies to insurance contracts, and that these principles will be liberally applied when it is necessary to prevent injustice and fraud being perpetrated by insurance companies upon their policy holders, when the latter have been misled or imposed upon by the agents of such companies. Forfeitures of insurance policies are not favored in law, and insurance companies may be estopped from claiming such forfeitures by the acts of their agents towards the policy holders. This is familiar doctrine. See *German Ins. Co.* v. *Gibson,* 53 Ark. 494; *Phoenix Ins. Co.* v. *Flemming,* 65 Ark. 54; *Ark. Mut. Fire Ins. Co.* v. *Claiborne,* 82 Ark. 150; *Queen of Arkansas Ins. Co.* v. *Forlines,* 94 Ark. 227; *Lord* v. *Des Moines Fire Ins. Co.,* 99 Ark. 476. But these well established doctrines of waiver and estoppel, invoked by the learned counsel for the appellee, have no application to the undisputed facts of this record. There was nothing done or said by the superintendent of the appellant to lead the insured to believe that the insured would be reinstated and the policy revived upon any other conditions than those mentioned in the reinstatement clause of the policy. There was nothing to mislead the policy holder or to induce her to believe that her policy would be revived from the day that she made application therefor or at any earlier date than was usual in such cases. Having had the policy in her possession, she must be held to have been familiar with the reinstatement clause therein, which plainly declares that the company would not be liable for death occurring within five weeks from the date of the reinstatement, and when the policy was revived and returned to her with the date of reinstatement indorsed thereon she was fully advised.

So the case we have here is not one of waiver of forfeiture or estoppel by conduct, but it is the simple case of enforcing a contract that the parties made. As was said by Wheeler, J., speaking for the Supreme Court of New York, in *Greenwaldt* v. *United States Health & Accident Ins. Co.,* 102 N. Y. Sup. 157-8: ''While the

courts have been reluctant to permit insurance corpora-
tions to void their policies through forfeiture clauses,
I find no case in which they have made a new or different
contract from that which was entered into between the
parties. This is not the case of an insurance company
voiding its policy; it is an effort to make it liable under
conditions which it was agreed should not constitute a
liability.''

Inasmuch as the undisputed evidence shows that
Alberta Rogers, the insured, died within five weeks from
the date of the reinstatement of her policy, under the
express terms of such policy the appellant is not liable,
and the court therefore erred in directing a verdict in
favor of appellee. For this error the judgment is re-
versed and the cause dismissed.