[Civil No. 2532. Filed November 29, 1926.]

[250 Pac. 882.]

# KANSAS CITY LIFE INSURANCE COMPANY, a Corporation, Appellant, v. FLORA H. PHILLIPS, Appellee.

Messrs. Armstrong, Lewis & Kramer, for Appel-lant.

Mr. J. C. Niles and Mr. John W. Ray, for Appellee.

ROSS, J.—Plaintiff's husband, William O. Phillips, on January 2, 1923, took out a life policy, in the sum of $2,000, with the defendant, Kansas City Life Insurance Company, of Kansas City, Missouri, in plaintiff's favor. The first year's premium of $37.50 was paid in advance, and future premiums of $9.92 were agreed to be paid quarterly on January 2d, April 2d, July 2d and October 2d.

The insured died on December 13, 1924, and this suit is brought to recover the amount of the policy. The case was tried before the court with a jury, and resulted in a verdict and judgment in favor of plaintiff.

The defendant has appealed, and by his assignments insists that the trial court erred in refusing, upon its motion, to direct a verdict at the close of plaintiff's and at the close of the whole case; it being contended that there was no evidence to support a verdict and judgment.

It is undisputed that the insured defaulted the payment due July 2, 1924, and on September 4, 1924, applied to the defendant for reinstatement, which application was thereafter approved and the premium paid as follows: $2.10 cash and the insured's note for the balance of $7.82, payable October 2d, conditioned that a failure to pay note when due would lapse policy.

One of the controverted questions was as to whether the note was paid or not. We will not set out the evidence on that question, as it appears to us it is immaterial, because, even if it were paid, its only effect would have been to continue the policy up to the due date of the next quarterly payment, October 2d.

The quarterly premium of October 2, 1924, was not paid when due, nor within the period of grace. The policy lapsed, and it is contended by defendant it was not reinstated. The facts on this point, as we gather them from the record, are about as follows:

During the early days of December, 1924—just what day is not shown—the insured became ill, and on December 13th died. It was on Sunday, December 7th, that the plaintiff personally made application at defendant's local office to have insured's policy reinstated, signed insured's name to application, and at the same time paid the local agent the premium due for the quarter beginning October 2, 1924. The application and premium were accepted by the defendant's local office and immediately forwarded to the home office in Kansas City, Missouri. This application for reinstatement was made out upon a blank form. The plaintiff testified:

"I signed a blank for mine and for his (her husband's) to have it reinstated. I knew . . . it to be necessary for me to fill out a blank to have it reinstated, that the policy had lapsed."

The blanks used in applications for reinstatement, as appears from the one used to secure the insured's reinstatement for the July delinquency, contain these conditions:

"I agree that said policy of insurance shall not stand as reinstated or renewed until the application is received and accepted at the home office of the company and approved by the medical director, and a certificate of reinstatement or renewal is issued and

actually received by me during my lifetime and while I am in good health.

"I further agree that any money, note, obligation, or other thing of value accompanying this application, or given to the company or its agent on account of the overdue premium on said policy, or any part thereof, shall be held by the company merely as a deposit and not as payment, until this application shall be accepted at the home office of the company and approved by the medical director, and a certificate of reinstatement issued and actually delivered to me during my lifetime and while I am in good health."

It is not questioned that this is the form signed by plaintiff on December 7th. Counsel for defendant asserts it is, and plaintiff does not dispute it. Even if we be wrong in assuming what counsel apparently concede, the policy itself requires the insured to submit to the insurer satisfactory evidence of insurability in order to be entitled, as a matter of right, to be reinstated. It is not pretended any such evidence was submitted, or indeed existed, at the time the application for reinstatement was received at the home office.

The home office, under date of December 11, 1924, wrote a letter to the local office, acknowledging the receipt of application for reinstatement and remittance covering October 2d premium, stated the premium note for July 2d dues had not been paid and that, upon receipt of such dues, prompt attention would be given the matter of application for reinstatement of insured's policy. Upon receipt of this letter (December 14th) the local office communicated its contents by telephone to the home of the insured, and on December 15th the father of the deceased appeared at the local office and paid the note covering the July dues. At that time the local agent knew nothing of the death of the insured, and the father said nothing about his son being dead. The local

office immediately remitted to the home office the July dues. On December 17th the defendant's local agent saw in a local newspaper a notice of insured's death on December 13th, and wired the home office that fact, whereupon the last application for reinstatement was rejected and the draft covering premium returned to the local office for the plaintiff.

If the formal application for reinstatement, together with the payment of the past-due premium, had the effect of reinstating the insured, the policy was in force at the time of the death of the insured.

The hereinbefore quoted parts of the application for reinstatement show an agreement as to when a lapsed policy would be considered reinstated. Under it the filing with the insurer of an application to be reinstated, and the payment of the past-due premiums, are not enough. These are only preliminary steps, and, after receiving them, insurer has a right to satisfy itself as to the character of the risk and whether it has been changed or become more hazardous than when the policy was issued. Some of the conditions are: That the insured shall be in good health, the application approved by the medical director, a certificate of reinstatement or renewal issued and actually received by the insured during his lifetime. None of these conditions was met in this case.

In the body of the policy it is provided that the insured may be reinstated at any time upon written request to the company at its home office, accompanied by evidence of insurability satisfactory to the company and the payment of all premiums in arrears.

Here the application for reinstatement was made on Sunday, December 7th, two months and five days after default in paying the October 2d dues. For some reason or other the insured did not sign the application for reinstatement, that being done by the plaintiff, who also paid the past-due premium.

The insured cannot neglect and refuse to pay the premiums on his policy when they are due and expect that the policy will be continued in force, nor may he be excused for such neglect upon the ground and for the reason that he was sick. If, perchance, he does become sick while his policy is lapsed, the insurer under the contract has the absolute right to reject his application for reinstatement.

When the application for reinstatement was received at the home office, it was not rejected, but held, without action, pending the remittance by the insured of the July dues. When the July dues were paid to the local office, the insured was dead. It was upon receipt of a telegram from the local office that the home office rejected the application for reinstatement.

The plaintiff makes some contention that, because the application for reinstatement was not rejected upon its receipt by the home office, it was equivalent to an approval thereof. This contention is not tenable, the agreement being that the reinstatement should become effective only after the application was approved by the medical director and after satisfactory evidence of the insurability of the insured, or rather the applicant.

The plaintiff cites *Lechler* v. *Montana Life Ins. Co.,* 48 N. D. 644, 23 A. L. R. 1193, 186 N. W. 271, a case in which the company was held estopped to deny the reinstatement of the insured, as containing "almost the same facts as are here presented." In the Lechler case it appears that the agents of the insurance company accepted the application of the insured for a renewal of his policy, and his note in payment thereof. These were forwarded to the home office, and, not being satisfactory to those there in charge, were returned to the local agents for certain corrections and substitutions. The local agents failed to follow instructions from the home office,

and the insured was left to believe everything was all right. He died, not knowing otherwise, and upon the facts the court held that, because he was led to believe his application for reinstatement had been accepted and approved, and his note taken in payment of premium, and he thereby lulled into the belief that his life was insured, the company was estopped—a state of facts very different from those we have here.

There is no question of estoppel or waiver presented in this case, at least so far as the application for reinstatement made in December is concerned. The facts present a plain case of failure to pay the premium in October, or to make timely application for reinstatement and proof of insurability.

We are satisfied the court erred in not directing a verdict upon the motion of defendant at the close of the whole case.

The judgment is therefore reversed and the cause remanded, with directions that plaintiff's complaint be dismissed.

McALISTER, C. J., and LOCKWOOD, J., concur.